**Jose C. SANTOS, Petitioner–Appellant,**

v.

**Darrell A. KOLB, Superintendent, Fox Lake Correctional Institution, Respondent–Appellee.**

No. 88–1724.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 24, 1989.

Decided July 26, 1989.

Ben Kempinen, Legal Assistance to Institutionalized Persons Program, Madison, Wis., for petitioner-appellant.

Donald J. Hanaway, Atty. Gen., Wis. Dept. of Justice, David J. Becker, Asst. Atty. Gen., Madison, Wis., for respondent-appellee.

Before POSNER, FLAUM, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Jose C. Santos brought a petition for a writ of habeas corpus under 28 U.S.C. § 2254, alleging that his state convictions in Wisconsin violated his rights under the Sixth and Fourteenth Amendments to the Constitution. There are two issues in this appeal. The first is whether trial counsel's failure to advise petitioner of the collateral consequences of a felony conviction (i.e., deportation) constitutes ineffective assistance of counsel. The second is whether trial counsel's failure to pursue a judicial recommendation against deportation

amounted to ineffective assistance of counsel.

Santos was charged with three counts of burglary in violation of Wis.Stat. § 943.10(1)(a) in the Circuit Court of Dane County, Wisconsin. Due to his indigency, an attorney, Gregory Meeker, was appointed to represent him. Santos is a Cuban expatriate who was allegedly confined as a political prisoner in Cuba. He was part of a group of Cubans who left Cuba from the Port of Mariel in 1980, often referred to in the press as "Marielitos."

Meeker learned that Santos was a Cuban national who entered this country in early 1980; knew that a felony conviction could possibly lead to deportation; and also knew that within thirty days of sentencing, an alien convicted of a felony could ask the sentencing judge for a judicial recommendation against deportation pursuant to 8 U.S.C. § 1251(b).

It is undisputed that Meeker did not inform Santos of the possible immigration consequences of his conviction, nor did Meeker request that the trial judge recommend against deportation.[1] Trial counsel's explanation was stated in an affidavit:

[A]t the sentencing process it did not occur to me that deportation is an almost inevitable consequence for a noncitizen who is convicted, or who makes an admission of a felony....

Petitioner's Exhibit at H–2.

Following pleas of guilty, Santos was convicted of three counts of burglary and sentenced to five years' imprisonment on count one, followed by a five-year consecutive term of probation for counts two and three. He was imprisoned following his sentencing and is currently on parole in Dane County, Wisconsin. As of the time of this appeal, immigration authorities have made no final decision concerning exclusion[2] or petitioner's request for political asylum.

Petitioner moved for postconviction relief in the Wisconsin state trial court, alleging that his trial counsel's failure to advise him of the immigration consequences of conviction and the failure to seek a judicial recommendation against deportation deprived him of his right to effective assistance of counsel. The trial court denied relief without a hearing. The Wisconsin Court of Appeals affirmed. *State v. Santos*, 136 Wis.2d 528, 401 N.W.2d 856 (Ct.App.1987). Petitioner's request for review by the Wisconsin Supreme Court was subsequently denied.

Santos then sought a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Wisconsin. He argued that had he known of the immigration consequences of conviction or that a judicial recommendation against deportation could be sought, he would not have pleaded guilty without first seeking such relief, if he would have pleaded guilty at all. Santos contended that without a timely judicial recommendation against deportation, conviction of a felony provides a statutory basis for removal of petitioner from this country.[3] The district court denied relief, finding that counsel's failure to advise petitioner of potential immigration problems

1. Pursuant to 8 U.S.C. § 1251(b)(2), a state or federal trial judge may prevent the use of a conviction as a basis for deportation (or exclusion) if the court recommends against it within thirty days of sentencing with notice to federal authorities. The statue *allows*, but does not *require*, the sentencing court to recommend either for or against deportation.

2. Both exclusion and deportation proceedings can result in the involuntary removal of a noncitizen from this country. Exclusion applies to persons who have not "entered" the United States, and consequently involves fewer procedural and substantive protections. In contrast, deportation proceedings presume the noncitizen has been in this country such to have developed ties and interests and thus such actions require greater procedural and substantive safeguards.

3. Under 8 U.S.C. § 1182(a)(9), an alien may be deported or excluded if convicted of a crime of "moral turpitude." Most felony convictions fall within this definition. Both deportation and exclusion generally result in the involuntary removal of the alien to his or her country of origin. If the country of origin will not accept the alien, he or she may be released on immigration parole or subjected to indefinite confinement in federal custody as a result of a final deportation (or exclusion) order.

was not ineffective assistance of counsel. Santos now brings this appeal.

■ In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth the standard to be applied to claims of ineffective assistance of counsel. To show that he received ineffective assistance of counsel, a convicted defendant must demonstrate that: (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 687–88, 694, 104 S.Ct. at 2064–65, 2068. The petitioner has the burden of establishing both components of the Strickland inquiry. *Shepard v. Lane,* 818 F.2d 615, 619 (7th Cir.), *cert. denied,* 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987). *See also Lewis v. Lane,* 832 F.2d 1446, 1452 (7th Cir.1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 83, 102 L.Ed.2d 59 (1988).

■ Moreover, judicial scrutiny of counsel's performance must be highly deferential. *Montgomery v. Petersen,* 846 F.2d 407, 412 (7th Cir.1988). There is a strong presumption that counsel's performance falls within "the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. To overcome this presumption, the defendant must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by reference to prevailing professional norms. *Lewis,* 832 F.2d at 1452. The reasonableness of counsel's performance should be evaluated not with hindsight, but from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.*

In *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Supreme Court held that the *Strickland* test applied with equal force to "ineffective-assistance claims arising out of the plea process." 474 U.S. at 57, 106 S.Ct. at 370. In addition to requiring proof of "unreasonable" performance, in order to obtain relief in a plea setting, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. at 370 (footnote omitted). A specific explanation of why the defendant alleges he would have gone to trial is required. *Key v. United States,* 806 F.2d 133, 138–39 (7th Cir.1986).

Here, Santos argues that his trial counsel knew that his client was an alien; that he feared an involuntary return to Cuba; and that a recommendation against deportation was the only possible remedy to prevent repatriation based upon his Wisconsin state convictions.[4] Trial counsel did not seek a recommendation, nor did he discuss that possibility with petitioner because it did not "occur" to him to do so.

Santos argues that the failure to pursue or advise such a cause of action deprived him of the full benefit of counsel and was "unreasonable" under the *Strickland* standard. He contends that had he known his admissions could result in his expulsion from this country, he would not have pleaded guilty or cooperated with authorities without a recommendation against deportation. Santos maintains that his decision was made without the benefit of knowing the most significant consequence that he would face, i.e., the risk of exclusion from this country. He argues that it is axiomatic that considerations of fairness and finality support the notion that a guilty plea be made intelligently and carefully, reducing

---

4. The state trial judge did not choose to make a recommendation to the Immigration and Naturalization Service:

> The policy of this Court is not to make a recommendation to Immigration and Naturalization Services in any case. My belief is that Immigration and Naturalization Services should make its determination based upon all the facts.

Appendix to petitioner's request for a writ of habeas corpus at 135. Under 8 U.S.C. § 1251(b)(2), a sentencing court is granted discretion to recommend that an alien's conviction not be a basis for deportation or exclusion. If made within thirty days of sentencing, such a recommendation is binding upon the Immigration and Naturalization Service.

the likelihood of an unfair result which, in turn, may result in protracted efforts to seek postconviction relief. *See generally Johnson v. Duckworth,* 793 F.2d 898, 900–902 (7th Cir.), *cert. denied,* 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986).

■ In a recent and similar case, we held that it was not ineffective assistance of counsel for an attorney to fail to inform his client of the immigration consequences of a conviction for a drug offense.[5] In *United States v. George,* 869 F.2d 333 (7th Cir. 1989), we stated:

> [A]ctual knowledge of consequences which are collateral to the guilty plea is not a prerequisite to the entry of a knowing and intelligent plea. A deportation proceeding is a civil proceeding which may result from a criminal prosecution, but is not a part of or enmeshed in the criminal proceeding. It is collateral to the criminal prosecution. While the Sixth Amendment assures an accused of effective assistance of counsel in *"criminal prosecutions,"* this assurance does not extend to collateral aspects of the prosecution.

*Id.* at 337 (Emphasis supplied). As we concluded in *George,*

> There are many collateral consequences to a criminal prosecution which, if not disclosed by counsel, nonetheless do not result in an involuntary plea of guilty. Consequently, we decline to hold as a matter of law that counsel's failure to inform a client as to the immigration consequences which may result from a guilty plea, without more, is "outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066.

*Id.* at 338.

The Supreme Court set forth the relevant standard in *Hill v. Lockhart:*

> Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson,* 397 U.S. 759, 771[, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763] (1970). As we explained in *Tollett v. Henderson,* 411 U.S. 258[, 93 S.Ct. 1602, 36 L.Ed.2d 235] (1973), a defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann." Id.,* at 267, 93 S.Ct. at 1608.

474 U.S. at 56–57, 106 S.Ct. at 369.

Thus, the key to whether defense counsel has failed to provide effective assistance is whether his shortcomings resulted in an involuntary or unintelligent plea. Various circuits have addressed the issue of failure of counsel to inform an accused of the likely deportation consequences arising out of a guilty plea, and have determined that deportation is a collateral consequence of the criminal proceeding and therefore no ineffective assistance of counsel was found. *United States v. Yearwood,* 863 F.2d 6 (4th Cir.1988); *United States v. Campbell,* 778 F.2d 764 (11th Cir.1985); *United States v. Gavilan,* 761 F.2d 226 (5th Cir.1985); *United States v. Santelises,* 509 F.2d 703 (2d Cir.1975). *But see Janvier v. United States,* 793 F.2d 449 (2d Cir. 1986).

If the consequence flowing from the plea is "collateral," then the defendant need not be informed of it before entering the plea. Since the doctrine provides a test for determining the voluntary and intelligent character of the plea, it is applied both to the trial court—as a measure of its performance in establishing the voluntary and intelligent character of the plea before accepting it—and to defense counsel—as a measure of his performance in providing a defendant with the information necessary to render the plea voluntary and intelligent.

The issue is not whether defense counsel erred in not discussing deportation, but

---

5. In *George,* however, the appellant's counsel *did* advise his client of the possibility of deportation, but such notification occurred after the guilty plea had been accepted by the court, though before sentencing had taken place.

whether his error amounted to a constitutional violation. As the Eleventh Circuit said in *Campbell:*

> Deportation is admittedly a harsh consequence of a guilty plea.... It is highly desirable that both state and federal counsel develop the practice of advising defendants of the collateral consequences of pleading guilty; what is desirable is not the issue before us.

778 F.2d at 769. The failure of petitioner's counsel to inform him of the immigration consequences of his guilty plea, however unfortunate it might be, simply does not deprive petitioner of the effective assistance of counsel guaranteed by the Constitution.

Moreover, the fact that some jurisdictions have enacted statutes to guard against the failure to inform a defendant regarding deportation does not mean that the providing of such information is constitutionally mandated.[6]

For the reasons discussed above, the decision of the district court is affirmed.[7]

AFFIRMED.

---

6. Wisconsin has enacted a statute, Wis.Stat. § 971.08, which requires trial courts to advise noncitizens of the immigration consequences of a conviction. As this statute went into effect after petitioner's plea had already taken place, however, it has no effect on the instant case.

7. Despite the outcome here, possible remedies for petitioner exist under the Immigration and Naturalization Act, although all are discretionary. Petitioner has pending before the Immigration and Naturalization Service a request for political asylum based upon proof of prior persecution and mistreatment and the likelihood of mistreatment should defendant be returned to Cuba.